On behalf of the Appellate Litigation Clinic at the University of Virginia School of Law, I'd like to introduce to the court this morning two third-year students, Amanda Lineberry, Kendall Burchard, who have satisfied the requirements for practice before this court and who have our client's consent to argue his appeal this morning. Ms. Lineberry will be doing the opening. Ms. Burchard will be doing the rebuttal arguments. Thank you, Professor. It's always good to hear from cavaliers. Welcome, Ms. Lineberry. Mr. Chief Judge, may it please the court, I'm Amanda Lineberry and I represent the petitioner in this case, Mr. Anthony Mangum. This is a case about the continually careless handling of a request that impacts years of a man's freedom. The question before this court today is whether the district court erred in denying Mr. Mangum's motion to compel compliance with this court's prior opinion in Mangum 1. We ask that this court reverse the district court's denial and remand for further consideration for two reasons. First, the district court's denial upholds the Bureau's cursory evaluation of Mr. Mangum's request, which does not comport with the views expressed by this court in Mangum 1. And second, the district court's denial of Mr. Mangum's motion also upholds the Bureau's failure to fully evaluate all relevant factors under 18 U.S.C. section 3621B in violation of this court's mandate. In Mangum 1, this court vacated, in part, the district court's grant of summary judgment to the Federal Bureau of Prisons in evaluating Mr. Mangum's non-protonque request because it invoked an invalid presumption under 18 U.S.C. section 3584A, which is not applicable in Mr. Mangum's case. In instructing the district court and the Bureau on remand, this court gave the Bureau two instructions. First, that it invoked no presumption under section 3584A. The first time around on remand, the Bureau again invoked this presumption. It has since corrected that error, and its compliance with this portion of that court's mandate is not contested here today. But the second instruction from this court was that the Bureau fully evaluate all relevant factors under 3621B in a fashion consistent with this court's opinion or the views expressed by this court's opinion in Mangum 1. And this court explicitly stated that one would reasonably believe in this case that the Bureau would weigh heavily what the state court judge did say, rather than what the federal court judge did not and could not say under binding Fourth Circuit precedent at the time. But now the precedent has changed, and now the district court has said something. Isn't that the sort of fundamental difference between the postures of these cases? There's no need for a presumption. The district court has come, the sentencing federal court has come right out and said, oh yeah, consecutive. Yes, it has said that, and it's very important. Yes, that opinion from the federal sentencing court was solicited on remand, and it seems to have been treated dispositively by the Bureau's evaluation. Can I ask you, is it your, just a pure legal question, is it your position today after Setzer that if a federal judge says, I want the federal sentence to be served consecutive to a state sentence, that BOP has the discretion to effectively override that decision? Is there someone at BOP who can override an Article III judge's sentencing decision? Yes, Your Honor. And that's a- Who got the commission? Who can do it? And under this court's precedent in Trowell, actually, this court- That's before Setzer, right? It is before Setzer. But Setzer makes pretty clear, this is a question that the federal district court judge gets to decide, and even if it's only by operation of the presumption, even if we're only presuming the federal district court's intent, BOP has no authority to countermand that. So if we're not presuming it, if it's actually express intent, I don't see where BOP has the authority to go counter to that. Nobody at BOP is supposed to be establishing the length of prison sentences in a way that the federal judge said he or she wanted the sentence to be. Yes, Your Honor. Our friends on the other side have not argued that Trowell has been overturned by Setzer, and both parties in this case have used Trowell in their briefs. Trowell and Setzer worked together, both to limit the BOP's discretion in deciding whether non-protunct requests should be granted or not. And- So you think, so your answer to my question is that federal district court judge say at the time of sentencing says, I'm imposing this sentence, I want it to be consecutive to the forthcoming state sentence, BOP can say, we're not doing that? Yes, because the BOP's obligation is that it weigh the federal sentencing court's opinion along with other factors. It's a five-factor statute, and the BOP's obligation is to the federal courts, but also to the interests of the criminal justice system as a whole. And that's- I just don't understand why an administrative bureaucrat at BOP gets to overrule a federal district court judge in terms of how long should this person spend in prison. That to me seems really startling and upsetting because, I mean, who knows what people in BOP think. Maybe they think everyone should- Maybe the district court says, I want it to be- So your argument would also be if the district court says, I want it to be concurrent, BOP can say, we're not doing that either. We think he should serve more time in prison, and that's what's going to trump in this case. BOP says, we want it to be 20 years, not 10, so that's it. Doesn't matter what the judges say. The Bureau is charged with the- to exercise discretion in evaluating these requests when there are courts that give contradictory- I think this might be an unusual setup that an administrative agency would have the power to overrule the sentencing decisions of Article III judges and state judges. That's exactly why the Setzer case gives priority to the federal sentencing judge in exercising- or in expressing and opining on whether these sentences should run concurrently or consecutively at the beginning of this criminal process and not necessarily as solicited on remand. And the Bureau's letter shows that it was- the supplemental joint appendix that was submitted on Friday shows that the Federal Bureau of Prisons has treated the federal sentencing court's opinion as dispositive in this case, despite the fact that this court said in its mandate in Mangum I that this- that in this case, the Federal Bureau of Prisons should weigh heavily- one would expect that they would weigh heavily what the state court judge did say rather than what the federal court judge did not and could not say at the time. And by denying Mr. Mangum's motion to compel compliance with that mandate, the district court has violated the mandate rule as expressed in United States v. Bell. Well, I agree with Judge Harris. It does strike odd that an agency would be able to counterman specific purrs of the court, but I'm surprised your answer is not going to the whole concept that the Bureau has that wide latitude in a non-proton process and that there are five factors that it considers and that fourth factor speaks to what the court does. It says it can consider the court's statement. Now, I don't know what that means in the statement that it did in imposing the sentence, and I don't know if you consider the fact that it's a- if he says it's going to be consecutive, is that the sentence or is that a statement that imposed the sentence that falls under this factor here? In this particular case, the federal district court's opinion is a statement that was solicited far after the sentence was originally- I know that, but I'm speaking to the concept that Judge Harris is speaking to generally, that a district court makes a pronouncement, a statement regarding the fact that this shall run consecutive. Why is that not binding? And my question is, does that statement, that it is consecutive, does it fit within factor four or is it part of the sentence that's outside of factor four? It fits within factor four, Your Honor, and it's part of the Bureau's charge under that of the interest of the criminal justice system as a whole, and the Bureau is not, under this court's opinion in trial, to give the federal sentencing court's opinion dispositive weight. And that, in combination with Setzer, both function as limitations on the Bureau's discretion in situations like this, where there are different opinions that have been expressed. Is it a law of the case sort of determination here that the law has changed insofar as allowing a district court to indicate something will be consecutive even if the state court has not sentenced, as it's done in this case? That has changed now, but because we specifically stated in the previous case, you may not consider the statements of the judge. Is that dicta or is that a mandate that has to follow as a law of the case? Two responses to your question, Your Honor. First, the Setzer case did change this court's, or did change the precedent relevant to this court's prior opinion in United States v. Smith, but it did not overrule this court's opinion in United States v. Trowell, or in the Trowell case. And this, the Trowell case was used heavily by the Federal Bureau of Prisons in the first argument in this case, and it has been used by both parties in this case. Specifically, I understand you're calling out the case. What didn't it overrule? Did it, are you now, will a district court judge not now be allowed to, when imposing a sentence, say, this shall run consecutive with that state sentence that we know you're getting ready to go to court for? Can that be done now? Yes, under United States v. Smith. But it couldn't be done before that case. That's the question I'm saying is, how is that different here? Yes, in United States v. Smith, the Fourth Circuit held that Federal sentencing courts could not opine on future sentences to be imposed, and Setzer reversed that, or it resolved a circuit split related to that opinion. So while Federal sentencing courts can now opine on future cases, the Trowell case, the holding in that case still stands. But would it also be acceptable now to, for the Bureau to get a post-statement from the judge, one with a letter or whatever, to say, okay, judge, what did you intend to do? And he says, well, I want it to run consecutive. Could he now, outside of what was going on then, do that? Yes, Your Honor. The Federal Bureau of Prisons is allowed to do that under the statute. So the only thing that distinguishes this case is your contention that we had a mandate in the previous case that prohibited it to be done under the law as it existed at that time. Yes. This Court said, after the Setzer case was decided, in an opinion that cites Setzer and Trowell, that the Federal Bureau of Prisons should be expected to weigh heavily what the State court judge did say, rather than what the Federal court judge did not and could not say. And under United States v. Bell, the Bureau was obligated to follow both the letter and spirit of this Court's mandate. But I guess, I will leave this alone, I just have one, I want you to address specifically the part of Setzer, it's a footnote, I believe, I don't have it in front of me, where the question is, when does the presumption apply? The Court explains when it applies and when it doesn't apply. And then it says, in a footnote, when that presumption applies, if we are presuming an intent that sentences run consecutively, BOP does not have the authority to effectively run them concurrently. Someone in the case, I think the government in the case was arguing that BOP did have that authority. And the Court said, no they don't, that's crazy. BOP isn't a sentencer, this isn't a sentencing statute, this is a place of confinement statute. Who would give BOP the authority, if we can presume sentencing court intent, to override that intent? So how do you square the idea that BOP, when the intent is expressed in a letter from the district court judge, BOP, those situations must be different for your argument to be right. So why would it be the case that BOP would have the authority to overrule express intent, but it doesn't have the authority to overrule presumed intent? It doesn't have the authority to overrule... You say it does have the authority to overrule the express intent of the federal sentencing judge. Setzer says it doesn't have the authority to overrule the presumed intent. If that presumption applies, BOP has to conform to the presumed intent. That's because there are contradictory opinions expressed in these cases. Here we have an opinion by this court in Mangum 1, an opinion by the federal sentencing court that was not expressed at the original time of sentencing, prior to when this decision was given to the Bureau, through Mangum's Dunk-for-Tunk request. And there's a state sentencing court opinion that this court privileged in its prior opinion, and the views expressed by this court in Mangum 1. So you're saying basically, look, the Mangum mandate is sort of frozen in time. It doesn't matter what happens afterwards, who expresses what intent, or anything like that. That's basically your argument. We have to deal with the mandate as it existed at the time it was issued. And it doesn't incorporate new information. No, Your Honor. The federal sentencing court's opinion is still relevant in this case, but it should not be treated dispositively under trial. And it also needs to be weighed with the Bureau's discretion, along with this court's prior mandate in Mangum 1. And this court's mandate expresses that it should evaluate all relevant factors under 3621B in a fashion consistent with this opinion that speaks explicitly about the opinion expressed by the state court, and Mr. Mangum's sentences should run concurrently. And additionally, the district court's denial also upholds the Bureau's failure to fully evaluate all of those factors. Administrative agencies are required to fully articulate the reasoning behind their decisions, and this is especially true given the second part of this court's mandate. In order to be a full articulation, explanation for an action must be reasonably discernible from the record on appeal, according to the Supreme Court precedent FCC v. Fox. And courts cannot supply a reasoned basis for an agency's action that the agency itself has not given, according to the Supreme Court opinion in Chenery 2. And additionally, the Supreme Court has said in Bowman Transportation that the Bureau is required to articulate a rational connection between the facts found and the choices made. And the Bureau has failed to do so in its one-page worksheet that lists some facts, but not all facts, and lists no reasons as to why it has weighed the federal district court's opinion solicited on remand as dispositive in this case. And the adequacy of this process matters, because when the agency fills out this one-page worksheet, they take four and a half years of a man's freedom into their hands. This is the difference between Mr. Mangum being released in 2025 versus 2030. A court or administrative agency that has this power without any direct political accountability I see that I've run out of time, and I'd leave to conclude, should not use it so lightly, and certainly shouldn't do so in violation of this court's mandate. And for these reasons, we ask that you reverse and remand for further consideration, so that the Bureau can follow the letter and spirit of this court's mandate. Thank you. Thank you. Counsel? Breedenburg? Good afternoon. Good afternoon. May it please the Court, my name is Mike Breedenburg, and I represent the government. The sole issue that this court identified for briefing is whether the district court erred in denying Mangum's motion to compel compliance with this court's opinion in Mangum 1. The directive in Mangum 1 was, upon remand, the district court shall return this matter to the BOP. The district court did do that. So the agency may give plenary consideration to Mangum's request for a non-protonic designation. The agency did that. Thank you. What do we do with that part of Mangum that analyzed this case as the law appeared to have been at that time before the Supreme Court acted? And it seems clear in Mangum 1 that the court basically took the position that the district court judge could not have order consecutive, because this sentence hadn't even been imposed, and therefore he was powerless to do so, and then the court used the words that said whatever the federal judge said was, you know, legally irrelevant, and therefore you couldn't consider what the judge said. Law changes allows it, but it wasn't the law at that time. How do you, I guess you characterized it in your brief, I think you say that's dicta. There's a lot. Why is it not the law of this case? There's a lot to unpack from that, if you'll allow me to try to do that. So the Smith case is the case that we're talking about where the Fourth Circuit said that a district court is powerless to impose a sentence, either consecutive or concurrent, to a yet-to-be-imposed sentence. Well, Setzer changed that, and that's a broad sweep of how the law... We agree with that. Right. But it wasn't changed when this opinion went down. That's right. And this opinion relied on the law at that time and said, you can't consider what we know to be right now to be legally irrelevant. And is it your position that because subsequently the Supreme Court then says, well, actually it is relevant, that now the mandate of that court is dicta as opposed to the law of the case? No. What Setzer is... So in answer to the question, Mangum 1 did freeze this case. So as the facts of this specific case, it's the government's position that the BOP cannot rely on the directive of the district court, even after the Bureau of Prisons got the letter. And what I mean by rely on is make it dispositive. So that answers Judge Harris's question from previously. But what the BOP... So you think going forward, the views of the district court are dispositive and BOP is not a discretion? Going forward, outside of this case, the government's position is that Setzer gives the district courts the authority and essentially takes that authority away from the Bureau of Prisons in most cases where the district courts actually make a determination. That seems to be agreement on that. I understand what your argument is, is that this factor 4 still is something because they've got this broad discretion. They can consider the statement but not as dispositive as it is now. But the problem is, is that the Mangum 1 case says that judge's statement is legally irrelevant. It was irrelevant to the judge having the authority to impose the sentence at the time that he could have done so. But what it's relevant to is the Bureau of Prisons statutory duty. So it's two totally different things. This is not the court's authority that we're talking about right now. We're assuming, based on Smith and the law at the time, that the judge in Middle District of North Carolina could not impose the sentence, concurrent or consecutive, to a yet-to-be-imposed sentence. But where it's relevant is when the Bureau of Prisons has to make a determination like this case where there was no decision. In this case, there was, but it has the practical effect of being silenced. So this is one of those cases where the Bureau of Prisons has to fill in the gaps. Let me ask you a question. This is puzzling. So you've got a case in which the federal judge imposes a sentence. And then it goes over to the state court because they've sort of given, just lent him to the court for him to be tried. And then you bring him back to the state court for sentencing. He's sentenced. He begins his sentence. Could the state at that point say, you go ahead and serve your federal sentence first, and then they take it? And by him, in effect, that would have given effect to the state's judge's determination this will run concurrent. In other words, is it required at that point that he would be serving the state sentence first as opposed to the federal sentence? So the answer is, ordinarily, the primary jurisdiction rule requires that the individual serve his time out with the state. They owned him first. They arrested him first, and the federal government borrowed him on the writ. But he goes back to- For the limited purpose just of the trial? For the trial and the sentence. The federal government couldn't have required that he serve the sentence? Or is that a discretionary thing? I'm trying to understand it now. I suppose that it's a possibility, but in the ordinary course, absolutely not. The federal government returns him back to the primary custodian, which was the state. So in answer to your question earlier, your question is, could the state have done something? Yes, the state could have done something. The state could have said, we're going to dismiss the charges. We're going to let them go to the federal government, and that was something that could have happened. What happened actually in this case? No, they wouldn't do that. That wasn't the question I have. The question I'm saying is, could they say, no, you've already been sentenced by the federal. Go serve that federal sentence. I tell you, the state has a reason for doing so. You know what it is? The federal government pays for that prison. A guy being in prison the whole time, if it's concurrent, why in the world would the state want a guy to come and serve in a state prison if he's saying it's concurrent? Send him to federal, and then the federal government pays, and the state doesn't do it. Can the state do that is my question. The answer is yes. The state can do it, but they can't force it. The way that it would happen is the state would ask the bureau. They can force it. They can just say, we're not going to imprison him right now, and turn him a loose, and he turns a loose. The feds are going to pick him up right then and start serving his sentence. That's a possibility. To finish the answer to your other, the part of what the state could do. I don't understand that being you can't force it. The practical thing is, look here, feds, you give him a sentence, take him back in there and take him to sentence. That doesn't sound like a force to me. It sounds like you don't really have a choice if the state tells you to come get him, because we'll just turn him a loose, and we'll re-imprison him when we want to. That's not. Or put him out on bail or something. That's another way it could happen. So your thought process is how can the state do this? The state can do it, but what happens is they end up giving up control. So they dismiss the charges. They let him go. They put him, they release him on some kind of bond. He comes to the feds. You keep bringing up dismiss the charges and let him go. I don't say dismiss the charges. I say just put him out on bail or something like that. He's not dismissed charges or pending appeal or whatever's going through the case. And he's walking around. The feds see him. You know what's going to happen. You're going to pick him up, take him in there. The reason I'm going this line of questioning is, if practically this could be done and would have been done this way, why does it make sense that because that wasn't done in that way? In other words, from the federal government's perspective, the federal government has an federal sentence. And their idea is, do they care if he's in state prison or federal prison during that time period? In other words, if he got 10 years and he spent 10 years over here in the state prison, does that prison differ in a different than if he'd been in federal prison? The issue there is not where he serves the sentence. The issue is the federal government being in charge of the effectuation of its own sentence. So that's where the difference is. So yes, the answer is, if the federal government wants to effectuate its 262-month sentence, they're going to do it in the federal custody. They're only going to be able to do that once the state relinquishes in some way the primary jurisdiction that the state had. Now, what the state did do in this case is they actually paroled Mangum, I don't know about early, but he only, he was sentenced, and after his sentence date, he only served three years and one month of a 10-year sentence. So the state paroled him. I have no idea what the intent was of the state, but it's perfectly reasonable to think that the state said, huh, he's going to a 262-month sentence in the federal government. Let's just go ahead and parole him. It'll essentially effectuate our concurrent sentence that we wanted to happen, and we'll just let him go. I don't know if that's why it happened, but it did. So when the ---- Your argument is the Bureau could have done it, but the Bureau had this wide latitude of discretion and chose to do it based upon these factors. Oh, the statute requires that if the Bureau of Prisons is put in a ---- If the statute requires that the Bureau of Prisons consider the five factors in making these determinations. If the Bureau of Prisons is put in a position where we have, they have to make the determination, they have to follow the relevant five factors. In this case, there were three that were relevant. The first was the crimes, the convictions that this guy had. It was the federal crime and the state crime were unrelated. That was a factor that was considered. The history and characteristics of the offender was a second factor. That was factor number three. That factor suggested that he's a career offender. He's got some serious crimes and suggests that some sort of heavy punishment is necessary. And then, of course, one of the factors, number four, which was at issue here ---- The only one we're talking about. Right. And so that's the only one. So that's the one where the Bureau of Prisons was able to finally get the intent of the federal sentencing court. Bureau of Prisons already had the intent of the state with the concurrent sentence order. Finally, the Bureau was able to get Judge Tilley out of the Middle District to provide input. All of those factors together. And what was the input? The input was ---- If I had the opportunity to make them consecutive to a sentence that had not occurred, I would have. No. He said some more than that. He said, I would not have ordered the sentence to run concurrent if I had that opportunity. But he also ---- Well, he knew about it. He recognized in his letter that he was aware that there were charges. He didn't know what was going to happen yet. Exactly. We presumed they were going to be found not guilty, weren't we? I don't know if he was. I thought that's what we say in constitutional practice. I know you laugh. You're exactly right. Your laugh is exactly what that's meaning in this country. No. Right. You know, your laugh is worth telling because it doesn't mean anything, does it? No, that's not what the laugh was about. What was the laugh about? Because you told me that he knew it was going to be a sentence, didn't you? No. I may have misunderstood you. But had he been tried in the state court? He had ---- I do not believe he had been tried nor sentenced. No, he had not been tried. So we don't know what would have happened. So the point was he ---- No. Sorry. The question is that how much time did he get in the federal sentence? 262 months. That's a lot of time, isn't it? That's what, you know, 20 years plus. 21, yes. 21 years. The state, you know, people raise federalism only when it's to their advantage. What happens to federalism here? The state said that's enough time. 21 years is enough. We sentenced him. We want it concurrent. We don't want this man to spend another day in state captivity so that he can go and spend that 21 years. The federal government knew where he was. That sentence itself says it's time for you to pick him up and bring him to the federal because the state doesn't want to give him a day more of time. So look what you can manipulate and say, no, no, let him stay there. Let him stay there. I've seen that concurrent sentence. Let him do all of that state. And that's exactly what happened. He comes in federal. Oh, no. Guess what? You start with day one. So you get 21 plus and the federalism, the state never intended him to spend a day more than that 21 years. And we told you in Magnum One, send this to the BOP and give high deference to what the state wanted. It's of no moment what the federal judge wanted. The federal judge made his decision. We respect that. He said 21 years. But the state said that's enough. And then the federal government just let him stay there, do a sentence that the state never intended him to do, and then say you start day one on 21 years after that. It's something about fairness that that is an affront, too. You're talking about federalism. I'm talking about fairness because that's what the Constitution starts with is to establish justice. And that's what the court used to be about, I think, federal courts, and looking at that in terms of appellate courts. It's ridiculous to say you can just keep him there. And then the state doesn't want to give him any more time. And then you go back and ask the federal judge, what would you could have done if you should have, could have had. It's also retroactive. No, I did not. It's not retroactive. The law of the case is here. And remember, you may not have been at this point, but he kept saying, well, you know, you can't overturn a panel. I think, was the first decision published? Of this? Yeah. Magnum One? Yes. Yeah, it was published. And that's a panel decision, isn't it? Yes. So we can't overturn that, can we? Let's go on, Bob. Got to work, can't work both ways. And we made it clear, take high deference and attention to what the state wanted. They went back and wrote a letter to the judge and said, judge, tell us what you would have done. And then say, aha, that's what you would have done. So that's the dispositive. That's not what we told them to do, and they didn't do it. What Magnum One said, and this is important, what a very wise chief judge said one time. Was I on the panel? Was it Word Matters? Pardon me? Was I on the panel? Yes, you were. I should have some idea of what we meant, wouldn't I? Do you think so? Pardon me? I should have some idea of what we meant, should I? I think you probably would. Yeah. As would Judge Harris, yes. Exactly. So what we are stuck with, again, as a wise chief judge once said, words matter. And what the Bureau of Prisons had to follow was mandate and directives. The mandate, the directive from the court was written in shall language. The district court shall return it for the Bureau of Prisons to make a determination, shall not invoke a presumption. No question about that. Can I ask you a question? Yes. Is there any chance this case is moved maybe? So the first time BOP actually did, in like clear defiance of the mandate, go ahead and rely on the presumption, that was in October. And that's when Magnum files his motion to compel compliance. That seems like that was probably a pretty strong motion. And that was when the motion was filed. And clearly that one should have been granted. But then now we have a whole other thing. But that doesn't make the case go away. Well, it's interesting that you raise that. So the government recognized and identified the potential mootness issue in a footnote in our opposition brief. The government did not raise mootness at the district court level. So the district court did not have the opportunity to rule on mootness. It may have been a – the government may have missed that argument early on. But in answer to your question, I think that this court could find it moot as a part of a subject matter jurisdiction kind of argument. The motion to compel was filed after the erroneous decision by the Bureau of Prisons. It said Joint Appendix 106. It was a letter that the Bureau of Prisons wrote to Magnum himself. And it basically was wrong. It said we presume consecutiveness, and it said that – suggested what the district court said was going to matter. So it was an error. And you can see how that would raise some concerns for us about, look, is anyone at BOP taking this seriously? Well, that's a very good question as well. But it was just an administrative error. It was an oversight. This is not an excuse. It's more of an explanation. But every other circuit in the country does it a little bit differently. This is a unique case. There's a lot of the case in this case. It was way out of the ordinary. So, yes, BOP missed it. There was a communication problem. As soon as the motion to compel was filed and someone saw it, Bureau of Prisons was immediately made aware, and they remedied the problem. But in answer to your bootiness question is the motion to compel was filed because of this erroneous decision in October of 2016, not December of 2016. And what happened in the government's response to the motion to compel is they provided or attached a worksheet, it's at Joint Appendix 117, and that is where the Bureau of Prisons correctly identified the five factors, the three relevant ones, and fully evaluated them. So in terms of the final worksheet, and this just goes back to my, I call it unease about the whole idea of BOP establishing the length of prison sentences, you say you go through the factors, like the nature and the circumstances of the offense, and based on the offense, serious offenses, he ought to spend more time in prison? That's basically how BOP is doing this? No, I think that the relevant part to that is the fact that the federal and state sentences were separate. And, again, maybe to answer Chief Judge Gregory's question about fairness is the dual sovereignty nature of the two sentences. If they were similar and related, that might be different, but they're separate. Yeah, I understand that, but I just, I look at this statute, and it doesn't look to me like these are factors that are designed to get at how long should someone spend in prison. You're supposed to be saying, like, the nature and the circumstances of the offense. Okay, they want to have designated a halfway house, and I don't think so because he's a murderer. That's what these are for. These aren't length of sentence factors. That's exactly right, Your Honor. So I'm sympathetic, but I don't know what the heck BOP was supposed to do with this case. Right, and that's exactly right. That's the only way that the Bureau of Prisons, this statute is the only way that the Bureau of Prisons is given the authority to effectuate sentences. This is the only statute that does it. So the government agrees entirely that this statute was not created for the purposes of determining whether sentences are concurrent or consecutive, as can be seen by some of the factors. Factor one will almost never be relevant in a situation like this. And even the ones that seem like they might be, that's not really what they go to. These factors are here. I mean, I've seen these cases back in the government. These are here for, like, someone wants to be in a halfway house, and no, we're not going to do that based on either the history and characteristics of the prisoner or the nature of the offenses. These aren't for figuring out how long the person is supposed to spend. May I respond? I'm out of time. Yes. So, again, the government agrees that this statute was not created for that, but it's the only way that the Bureau of Prisons can effectuate concurrent sentences. And in this particular situation where the district court did not order it, the Bureau of Prisons has to fill the gap and make the determination. And based on after Barden was a case out of the Third Circuit that talked about this and explained how this works, that's what courts have been doing for years using this statute. Now, I will say, after Setzer, the usage of this statute for this purpose is going to be restricted significantly because the occasion for the Bureau of Prisons to have to fill this gap hopefully will be shrinking to maybe nullity. Because you'll be asking judges to make that statement so that you don't have to rely upon the Bureau of Prisons. Hopefully the judges will be doing that. Let me ask you this. This is where I'm going with this. So this case is unique, I understand, from your perspective because it's going to the Bureau of Prisons. And what we've said in this opinion here that basically said that the federal district court, the judge in this circuit, was powerless to impose a sentence that was consecutive, subsequently was changed. If this opinion had gone to a district court judge, that district court judge would have no option but to follow it. If the district court had the authority to? In other words, if an opinion goes to a district court judge and says what this opinion says right here, that district court judge doesn't have any factors to go look at. It's got to do what this opinion says. But you maintain that the Bureau can do something that the district court judge can't. Is that right? In this very limited circumstance, yes. Well, because it's a limited circumstance and it doesn't appear as though Mr. Mangum is going to go free even if he wins this case today. He's not going anywhere anytime soon. But it just seems to me that a case says what it says when it goes back, whether it goes to the district court or goes to the agency for consistency. If a court says, albeit now that the law has changed, it says, and it makes it clear, it says, at the time Mangum was sentenced. It limits it. It makes it clear. And that is a correct statement. At the time, by the Fourth Circuit, the court was powerless to do something. So all it's saying is you can't consider it because we're going to be fair, going back to Judge Gregory's point, because at the time he was sentenced, the district court judge could not do this. He couldn't give it a consecutive sentence. Well, sentence hadn't occurred yet. Albeit it's changed now. So I just don't understand the proposition that an agency can do something that a federal district court, and I'm sure there are plenty of federal district court judges that feel the same way, but if we can bind them, it seems like we can bind an agency to do what we say. If I may respond? Please. So if the situation that you're suggesting takes the power because of Smith, takes the authority away from the federal sentencing court, and because of Mangum 1, there's no authority for the Bureau of Prisons to consider and make the determination or undetermination? There is authority, and there was authority from the beginning. But just like a district court could have had authority, once we give you the law of the case, guess what? It narrows it to the law of this case. You don't like it, take it up top. No one did that. That's the law here. And it may well be that sometimes when we send something back with a case, you know this, it may conflict with something else out there. But you're bound by what this court says when it goes to the district court. No district court judge is going to come back and say, well, I disagree with the circuit court, and we're going to do it. They're going to get a mandamus. Nobody wants one of those. And I think the same thing has to be applicable. We cannot allow an agency to do that which a district court judge can do. Otherwise, what are we seeing up here? Why are we making a pronouncement? If the judge or the BOP could not make the determination, then the default is also statutory. It's 3585A. And the way that it works for Mangum is you can make the determination in this case, but you can only do it in this limited case. You cannot consider the statements of the judge because the judge under this case was powerless. That's the only thing. You can go away every other factor, use everything you want. That's the only thing you can't do. I'm sorry. Are you conceding that under the mandate in Mangum? I thought the mandate in Mangum was you can't rely on a presumption of intent by a district court to do something that the district court didn't have the authority to do at the time. Why would you presume he meant to do that? That makes sense to me. But is it your position that that also means that if that intent is later made express? Is it your position that if that intent is later made express, it would be inconsistent with what Mangum said about presuming intent to consider the express intent? I think the presumed intent was the intent of the presumption of the 3584. No, no, I understand. Right? Yes. So what is still there, though, is the Bureau of Prisons' authority to weigh all the factors. Thank you. Thank you, counsel. Ms. Berger, do you have some time? Mr. Chief Judge, and may it please the Court, my name is Kendall Berger. A few points in rebuttal, Your Honors. First, I'd like to start with the fact that this is a very unique case. Our friends on the other side suggested as much, and we completely agree. As Judge Wynn mentioned earlier, the case says what it says, and this is particularly unique because of the mandate that came from Mangum I and how that intersects then with the previous law that was the law of the Fourth Circuit at the time. What do you maintain is the mandate of Mangum I? Is it the opinion or is it the statement? I mean, the basis of Mangum I turned upon one basis, and then it flipped over and says, well, there's another little matter here, a second alternative, and for which the government reads, well, that's counterdictive because you really didn't need it. It wasn't needed to overturn it at that point, was it? Your Honor, to answer your question about what the mandate was from Mangum I, it was to evaluate the factors consistent with the views expressed in this opinion, and part of the views expressed in this opinion were to weigh what the state judge did say rather than what the federal judge did not and could not say. In other words, once the court made a determination that the statutory presumption wouldn't be applicable here, you didn't need to go to this second and more compelling consideration, did you? Would you mind rephrasing your question? In other words, the court says there's a second compelling consideration, and that is that the district court judge was powerless to impose the sentence. But the first one was the court says they agree with your defendant that the sentencing judge's silence does not create a presumption. So that was all you needed to send it back? Yes, Your Honor. So is that, as the government say, dicta, or is it a mandate? Your Honor, we do feel it is part of the mandate, particularly in light of the Fourth Circuit's opinion in United States v. Bell. I don't like the word law of the case. I don't know why I keep thinking of that as being the way you could do it, because when you send cases back, it may be dicta to other cases, but when you send a direct line, and it simply means that you follow whatever we tell you directly. We don't go dicta and all that. This is not dicta to you. It might be dicta to everybody else out there. But for you, we're telling you right now this is how this is done. Don't you think that's a better position to take on a case like this, that this is the law of the case, and you follow it whether you're a trial judge or whether you are agency? Yes, Your Honor, and I think your intuition is correct there, in particular because of how unique this case is. Yes, there are principles of administrative law here, but the court's mandate is binding on the lower court, and that lower court instructed the Bureau of Prisons to follow the instructions that this court laid down. Those principles of hierarchy and finality are very important to be respected here, and if they're not, then the Bureau of Prisons needs to reconsider in light of this court's instructions, those clear instructions. That's why I get confused when you say the court's mandate as opposed to the court's law of the case, and maybe I'm wrong on that. I'm just trying to think in terms of it doesn't have to be a mandate. It's just the way we – I guess in essence you're saying they're the same. Yes, but to Your Honor's point about talking about the law that was established in the case, Mangum I did freeze the law, in particular the law as was the Fourth Circuit's binding precedent in United States v. Smith. I think it's very important to be precise about what that law was. And quoting from the court's opinion, another sentence must exist at the time a district court imposes its sentence. A court cannot impose its sentence consecutively to a sentence that does not yet exist. And as the federal judge said in their letter responding to the Bureau of Prisons' request about whether or not they would have had the sentences run consecutively or concurrently, they acknowledged that they were unaware of the charges in Oklahoma even. I don't want to make your head explode or anything, but do we have the power by way of a mandate to sort of change the law? Because after Setzer, it's clear the statute always gave. It's not like it used to be that the district court didn't have the authority to do this, and then after Setzer it turned out that he did. After Setzer, it turns out he had the authority at all times. We were reading the statute wrong. Under that statute, the district court did have the authority to impose the consecutive sentence. Like, that's how, you know, the law is an ever-present thing. It never changes. So it turns out even at time one, at the time of Smith and at the time of Mangum I, the district court did have this authority. Do we have the power by way of mandate to sort of take that away? And, Your Honor, we can see that going forward after the Setzer case. Well, what I mean even as to this district court judge in this sentence, he had the authority to do this. Who are we to say we disagree with the Supreme Court and he can't do it? And, Your Honor, even in Setzer, the Supreme Court, oh, I see I've gone over my time. May I? You may. You may respond. Thank you, Your Honor. We have a question after that as well. Go ahead. Even in the Setzer case, the Supreme Court acknowledged that given the framework, the statutory framework, it is always more respectful of the state's sovereignty for the district court to make its decision up front rather than for the BOP to make the decision after the state court has acted. So there are certain federalism concerns there, and although we concede again that Although the dissent had a really good argument, I thought going the other way, saying it's much better for the district court to make the decision after the state court so they know whether there's going to be double counting. They have full information when they make the decision about whether there will, in fact, be a state conviction and if there is, what the sentence will look like. So, I mean, I think you could sort of argue that. You're right. It was the dissent, not the majority. But, yes, Your Honor. Judge Percy. Looking at it, it's like saying the court, let's say, even if the court had that authority, it made the sentence. It's sort of the rule of lenity in that sense. In this case, it's unique, and the mandate was clear here. The law at the time, they could not do so, and we mandated they look at what the state did. But, in effect, we're allowing the district court to really extend his sentence now, more beyond the 21 years. I think that's correct, Your Honor. That's the effect of it, is making it more than 21 years. Yes, and it's upsetting of expectations and unsettling of expectations, definitely. Our client was under the impression that his sentences would run concurrently, as per the state judge's orders, and to then have that determination revoked and changed is very unfair to him, as you've pointed out. Can I ask exactly what relief you want? Because I think in your brief, the relief you requested was that we actually order BOP to just designate and be done with this. But now you're saying we should remand the case, and the instruction would be, send it back to BOP and tell them you may not look at this letter by the federal district court judge, but other than that, look at the rest of it? Yes, Your Honor. Take the letter out. Yes, we understand the importance of abiding by the statutory scheme there, and there are a number of factors, as the court has discussed today, that need to be weighed in that assessment. But cabining the Bureau of Prisons review to really focus in on what the state court judge did say, rather than what the federal judge did not and could not say at the time, is important, and that's what we do ask for today. And the Bureau of Prisons never said that the state facility was not an adequate housing facility, correct? No, Your Honor. Because they can make some assessments as to whether or not where they were doing alternate time, whether or not that was, I guess, a reasonable facsimile of a prison. They never raised the question that where he was housed in the state wasn't a prison, right? Right, correct? No, Your Honor. So wouldn't it be better just to send his case back and direct him to, that he gets appropriate time, credit for the time in state prison? Yes, that's definitely available. Even that first factor, to your point about that, was calculated incorrectly by the Bureau of Prisons. They looked at the state facility as opposed to, or they looked at the federal facility as opposed to the state facility. There are no further questions. Thank you, Your Honors. Thank you so much. And I note, Professor, thank you so much. Your students acquitted themselves very well, and we thank you for your court appointment. And, again, representing and taking these cases is very important to the court, and we appreciate it. As counsel, I very much appreciate your able representation of the United States. With that, we'll ask that you adjourn the court for the day, and then we'll come to that agreed counsel.
judges: Roger L. Gregory, James A. Wynn Jr., Pamela A. Harris